**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**

SAMANTHA BAKER,

        Plaintiff,

vs.

CORELLE BRANDS LLC, and
INSTANT BRANDS INC. f/k/a
DOUBLE INSIGHT INC. d/b/a
INSTANT POT COMPANY,

        Defendants.

Case No.  5:24-cv-16

## COMPLAINT AND JURY DEMAND

Plaintiff, SAMANTHA BAKER, by and through undersigned counsel, brings forth this matter against Defendants CORELLE BRANDS LLC and INSTANT BRANDS, INC. f/k/a DOUBLE INSIGHT INC., d/b/a INSTANT POT COMPANY, and alleges:

## INTRODUCTION

1. This products liability lawsuit seeks compensatory damages on behalf of plaintiff SAMANTHA BAKER who was burned and severely injured by an Instant Pot® Programmable Electric Pressure Cooker, Model IP-DUO60 V3 (hereinafter "Instant Pot®"), which Defendants, designed, manufactured, marketed, sold and distributed.

## PARTIES, JURISDICTION AND VENUE

2. At all relevant times to this complaint, Plaintiff SAMANTHA BAKER was a citizen and resident of Zebulon, North Carolina.

3. At all times relevant to this complaint, Defendant CORELLE BRANDS LLC was a Delaware Limited Liability Corporation with its principal place of business located in Cook County at 9525 West Bryn Mawr Avenue, Suite 300, Rosemont, Illinois 60018.  As such Defendant CORELLE BRANDS LLC is a citizen of the state of Illinois.

4.     Defendant CORELLE BRANDS LLC is registered to do business in the State of North Carolina.

5.     Upon information and belief, Defendant CORELLE BRANDS LLC acquired or merged with Instant Brands Inc. in 2019.

6.     As a result of the acquisition or merger of Defendant CORELLE BRANDS LLC with Defendant INSTANT BRANDS INC., Defendant CORELLE BRANDS LLC acquired and/or assumed the assets, obligations and legal liabilities of Defendant INSTANT BRANDS INC. including for the Instant Pot® that is the subject of this lawsuit.  Unless specified otherwise, hereinafter, Defendant CORELLE BRANDS LLC and INSTANT BRANDS INC. will be referred to as "INSTANT BRANDS" such that "INSTANT BRANDS" shall mean CORELLE BRANDS LLC and/or INSTANT BRANDS INC.

7.     Defendant INSTANT BRANDS is a Canadian corporation with its principal place of business at 200-495 March Road, OTTAWA ON K2M 2E9, Canada, and a mailing address of Suite 383, 11-300 Earl Grey Drive, Ottawa, Ontario, K2T 1C1, Canada.

8.     Defendant INSTANT BRANDS does business as Instant Pot Company.

9.     Defendant INSTANT BRANDS is the same corporate entity that was formerly known as Double Insight Inc.

10.     Under each corporate name, Defendant INSTANT BRANDS and Double Insight Inc., this entity has held itself out as doing business as Instant Pot Company.

11.     Defendant INSTANT BRANDS itself, or through third-parties acting at its request, manufactured the Instant Pot® that is in issue in this lawsuit.

12.     Defendant INSTANT BRANDS itself, or through third-parties acting at its request, imported the Instant Pot® that is in issue in this lawsuit.

13.     Defendant INSTANT BRANDS itself, or through third-parties acting at its request, distributed the Instant Pot® that is in issue in this lawsuit.

14.     Defendant INSTANT BRANDS itself, or through third-parties acting at its request, sold the Instant Pot® that is in issue in this lawsuit.

15.     Defendant INSTANT BRANDS itself, or through third-parties acting at its request, advertised, marketed and promoted the Instant Pot® that is in issue in this lawsuit.

16.     Defendants CORELLE BRANDS LLC and INSTANT BRANDS INC. do a substantial amount of business in Zebulon, North Carolina.

17.     Venue is proper under 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to the claim occurred in the State of North Carolina.

## COMMON ALLEGATIONS

18.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the parties are citizens of different states.

19.     At all times relevant to the issues alleged in this Complaint INSTANT BRANDS was engaged in the business of designing, manufacturing, importing, marketing, distributing and/or selling, including in Cook County, Illinois, either directly or indirectly through third-parties or related entities, the Instant Pot® Programmable Electric Pressure Cooker, Model IP-DUO60 (hereinafter "Instant Pot®"), that is in issue in this lawsuit.

20.     INSTANT BRANDS claims that it "was founded in 2009 by a team of Canadian technology veterans".

21.     INSTANT BRANDS claims that Dr. Robert Wang was its "founder".

22.     Dr. Robert Wang claims to be the inventor of the Instant Pot®.

23. On or about March 9, 2010, the Word Mark "Instant Pot®" was registered with the United States Patent and Trademark Office listing Double Insight Inc. Corporation Canada as the Owner (Registrant), Registration Number 3887207.

24. On its website, INSTANT BRANDS states that "[i]n late 2010, after eighteen grueling months of research, design and development they introduced the Instant Pot® CSG Multi-Use Programmable Pressure Cooker."

25. INSTANT BRANDS' website states that "[e]ach subsequent Instant Pot® product introduction has raised the bar on functionality, user-friendliness and safety."

26. INSTANT BRANDS' website also states that "[i]n 2012 the company launched the Instant Pot® Lux 6-in-1 Multi-Use Programmable Pressure Cooker, 6 quart – which was the most advanced pressure cooker available on the market at the time. The Lux 6-in-1 quickly became the category best seller on Amazon, leading the company to introduce the Lux 6-in-1, 5-quart version of the product, and later the Instant Pot® Duo 7-in-1 Multi-Use Programmable Pressure Cooker."

27. The Instant Pot® brand is the property of INSTANT BRANDS.

28. With its acquisition by or merger with Defendant CORELLE BRANDS LLC, the Instant Pot® brand is the property of Defendant CORELLE BRANDS LLC.

29. An Underwriters Laboratories listing was issued for the Instant Pot® Programmable Electric Pressure Cooker, Model IP-DUO60 Instant Pot®.

30. The UL Listing means, in part, that when the IP-DUO60 Instant Pot® product is under pressure the cover (lid) should not be able to be opened by applying a force of 100 pounds (445 N), with the force to be applied gradually.

31. Defendant INSTANT BRANDS wrote, authored and/or adopted the English language information that appears on the labeling and packaging of the Instant Pot®.

32. Defendant INSTANT BRANDS wrote, authored, adopted and/or approved the English language information that appears in the User Manual for the Instant Pot® that is in issue in this lawsuit.

33. On or about January 18, 2021, Plaintiff SAMANTHA BAKER purchased an Instant Pot® Programmable Electric Pressure Cooker, Model IP-LUX60.

34. Before January 18, 2021, DEENDANTS received notice from other users of similar Instant Pot® pressure cookers that the product exploded or opened with pressure in the unit.

35. The Instant Pot® purchased by Plaintiff SAMANTHA BAKER was designed, manufactured, imported, promoted, marketed, distributed and sold to Plaintiff SAMANTHA BAKER by Defendant INSTANT BRANDS, indirectly through third-parties acting on their behalf.

36. Defendant INSTANT BRANDS had a duty to do quality assurance inspection, sampling, and testing prior to releasing Instant Pot® products for shipment and distribution.

37. Defendant INSTANT BRANDS chose not to do quality assurance inspection, sampling, or testing prior to releasing Instant Pot® products for shipment and distribution.

38. Defendant INSTANT BRANDS was negligent in failing to do quality assurance inspections, sampling, or testing prior to releasing Instant Pot® products for shipment and distribution.

39. The Instant Pot® purchased by the Plaintiff SAMANTHA BAKER was designed, manufactured, exported, distributed and sold pursuant to the specifications of, and at the request and direction of Defendant INSTANT BRANDS.

40. The Instant Pot® purchased by and sold to Plaintiff SAMANTHA BAKER bears an Underwriters Laboratories Listed mark, UL 9H06 E214884.

41. On September 7, 2016, DEFENDANTS received notice from a user of an Instant Pot® "[a]fter signaling off and beeping, when I tried to remove the lid the pressure cooker exploded contents causing 2nd and first degree burns. Paramedics were called and transport to burn trauma unit followed."

42. On October 7, 2016, DEFENDANTS received notice from a user of an Instant Pot®, manufactured in April of 2016, "I suffered a second degree burn on 9/13/16 from using your Instant Pot pressure cooker. We just purchased it from Amazon on 9/6/16 and this was only my second time using it. When the accident happened I was making ox tail soup and when I turned the lid to take it off, it popped off completely and the soup spilled all over my body. It is my understanding that the pot has a safety function where it should not open if there is still too much pressure so this should never have happened."

43. On January 2, 2017, DEFENDANTS received notice from a user of an Instant Pot® recently purchased, "[L]ast night, after cooking and decompressing for over 5 mins, when I twisted the lid it exploded off with some force. Luckily I was not hit with the lid but my hands got quite burnt from the hot liquid which splahed every where [sic]."

44. On January 5, 2017, DEFENDANTS received notice from a user of an Instant Pot®, manufactured in September of 2016, "Isn't there supposed to be a safety feature to prevent opening the lid if pressure is built up? I've just spent the last two hours at urgent care and the pharmacy." "After the cycle completed and the machine beeped, I switched the vent to Venting. After that, I twisted the lid and the liquid shot out forcefully – enough to land some of the liquid in a tall container about 8 inches away from the pot."

45. On January 7, 2017, DEFENDANTS received notice from a user of an Instant Pot®, manufactured in April of 2016, "I was making soup when it happened. I had put it on manual for 8 minutes. My level was to 4L so it was below the full level. It had ended and went into the

automatic [sic] steam release mode. I then went ahead and started to vent. It vented until there was really no more steam coming out and then when I went to open it the lid flew off and soup came flying out and scalded me."

46. On January 13, 2017, DEFENDANTS received notice from a user of an Instant, manufactured in May of 2016, "[t]he float valve was down. I released the steam through the float valve until it wasn't coming out anymore, then put it back to the closed position. Then I attempted to open it, assuming if there was pressure it wouldn't allow me to open it. It moved, so I slowly began to open it, then when it unlocked it violently erupted out of the pot and onto my hands, the floor, the cooking surface, the counter, just all over."

47. On March 8, 2017, DEFENDANTS received notice from a user of an Instant Pot®, manufactured in September of 2016, "I used my instant pot on Monday night to make a soup. I let the pressure release on its own and went over to check on it. I began to open the lid and the top exploded off and the contents of my pot blew out all over my kitchen, leaving first degree burns on my forearm. Plastic lids to jars were melted completely. This product is dangerous. I purchased through Amazon and am going to ask them for a refund."

48. On April 6, 2017, DEFENDANTS received notice from a user of an Instant Pot®, manufactured in November of 2016, "On Tuesday 4/4/17 I cooked soup in the pot. After it was done it went to keep warm mode as usual. I let it sit as I always do. After awhile [sic] I went to check the soup. I moved the release valve to make sure no steam was in the pot. I then turned the lid and the pot exploded all over the counter and my right hand and forearm."

49. On April 17, 2017, DEFENDANTS received notice from a user of an Instant Pot®, manufactured in August of 2016, "Your product resulted in a second degree burn and multiple other burns. You claim that your Saftey [sic] Lid Lock prevents accidental opening when pressurized. However, when we opened the lid, after releasing the pressure using the release valve,

it spewed boiling liquid several feet across the kitchen and severely burned a kid, which resulted in a hospital trip." "The injured kid received 1st and 2nd degree burns but is healing well so far."

50. On May 8, 2017, DEFENDANTS received notice from a user of an Instant Pot®, "[y]esterday evening my husband was opening our instant pot with chicken and approximately 4 cups of broth in it when the pot malfunctioned spewing boiling hot broth all over my husband and our kitchen. My husband sustained scald burns over a large portion of Plaintiff SAMANTHA BAKER's torso and groin through Plaintiff SAMANTHA BAKER's clothes and several appliances on the counter were damaged in the process. The instant pot had been on manual for 14 minutes; my husband released the pressure fully and the float valve went down."

51. On September 20, 2017, DEFENDANTS received notice from a user of an Instant Pot®, manufactured in August of 2015, Serial Number 150860.20256 "We used our pressure cooker to make applesauce yesterday. The pressure was released and my husband opened the lid. The pressure apparently was not released and the lid exploded off and hot applesauce severally burned my husbands [sic] face and arms, my grandsons [sic] face, and my shoulder and neck. Can you please explain how this could have happened? We turned the release pressure button on the top of the machine."

52. As other models of Instant Pot® pressure cookers use the same lid locking assembly as the IP-DUO60 products, it is believed that after the date of sale to Plaintiff SAMANTHA BAKER and before January 18, 2021, DEFENDANTS received notice from other users of other models of Instant Pot® products that the lid of the product opened when under pressure.

53. On January 18, 2021, Plaintiff SAMANTHA BAKER was preparing a pot roast, in Plaintiff SAMANTHA BAKER's home, using the Instant Pot®.

54. Prior to purchasing and using the Instant Pot®, Plaintiff SAMANTHA BAKER saw videos and ads for the Instant Pot® and read its manual.

55. On January 18, 2021, the Instant Pot® was being used according to its instructions, videos and warnings.

56. The Instant Pot® contained various food ingredients, including but not limited to turkey wings, salt, and water, and was filled to a level below the fill line.

57. After Plaintiff SAMANTHA BAKER's Instant Pot® finished the cook cycle, Plaintiff SAMANTHA BAKER released the steam from the pressure cooker until Plaintiff SAMANTHA BAKER observed no more steam coming from the unit.

58. After observing no more steam and relying on the manual instructions, Plaintiff SAMANTHA BAKER began to rotate the lid handle to open the pressure cooker. As the movement to disengage the lid was occurring, the lid blew off, releasing with sudden and great force the steam and pressure that was still contained within the Instant Pot®, and spewing its scalding contents onto Plaintiff SAMANTHA BAKER's breasts and abdomen.

59. As a direct and proximate cause of the sudden release of pressure, and discharge of the scalding contents of the Instant Pot®, SAMANTHA BAKER sustained serious, painful, disfiguring, and permanent scalding burn injuries to Plaintiff SAMANTHA BAKER's breasts and abdomen, and other injuries and damages as set forth in this Complaint.

60. Prior to January 18, 2021, none of the Defendants warned that DEFENDANTS' Instant Pot® pressure cookers had been reported to have been or were capable of opening with pressure still inside the unit pressure.

61. Prior to January 18, 2021, DEFENDANTS failed to recall any of the Instant Pot® pressure cookers products that had been sold.

62. The Instant Pot® was designed with the specification that the lid cannot be opened while the contents of the pot were under pressure.

63.     The Instant Pot® was manufactured with the specification that the lid cannot be opened while pressure remained inside the pressure cooker.

64.     The intended safety feature of the Instant Pot® that the lid cannot be opened while pressure remained inside the pressure cooker was not adequately tested in design and development of the product to ensure that it was effective during the conditions of reasonably expected use.

65.     DEFENDANTS warranted that the Instant Pot® had safety features such that the lid cannot be opened while pressure remained inside the pressure cooker.

66.     The intended safety feature of the Instant Pot® that the lid cannot be opened while pressure remained inside the pressure cooker was not adequately tested in design and development of the product to ensure that it was failsafe under the conditions of reasonably expected use.

67.     DEFENDANTS marketed and promoted the Instant Pot® with the claim, "As a safety feature, until the float valve drops down, the lid is locked and cannot be opened." [User Manual pg. 8; copy available at https://instantpot.com/wp-content/uploads/2017/09/LUX-Series_Manual_English_2017-web.pdf]

68.     DEFENDANTS marketed and promoted the Instant Pot® with the claims, "Safe, Convenient and Dependable!", "10 Proven Safety Mechanisms", "Pressure Regulator Protection" and "Leaky Lid Protection" appearing on the box in which it was delivered to the Plaintiff.

69.     DEFENDANTS marketed and promoted the Instant Pot® with the claim and representation, "[The] Instant Pot protects you with 10 proven safety mechanisms and patented technologies."

70.     DEFENDANTS marketed and promoted the Instant Pot® with the claim and representation, "Instant Pot is carefully designed to eliminate many common errors that may cause harm or spoil food." [See https://instantpot.com/wp-content/uploads/2018/01/10-Safety-Features.pdf.]

71. DEFENDANTS marketed and promoted the Instant Pot® with the claim, "Automatic Pressure Controller keeps pressure always in the safe range."

72. DEFENDANTS marketed and promoted the Instant Pot® with the claim and representation, "It [Instant Pot] passed the stringent UL certification giving you uncompromised safety and peace of mind…"

73. DEFENDANTS marketed and promoted the Instant Pot® with the claim, "Instant Pot® Duo is a smart Electric Pressure Cooker designed to be Safe, Convenient and Dependable."

74. Instructional information provided in the Instant Pot® User Manual expressly stated, "As a safety feature, until the float valve drops down, the lid is locked and cannot be opened." [Instant Pot User Manual, pg. 8.]

75. Prior to the sale of DEFENDANTS' Instant Pot® product to Plaintiff SAMANTHA BAKER on or before January 18, 2021, DEFENDANTS had received notice that in some of the Instant Pot® products that had been sold, the lid could be opened while still under pressure, causing scalding hot contents to erupt from the pot when opened.

76. Prior to the sale of DEFENDANTS' Instant Pot® product to Plaintiff SAMANTHA BAKER on or before January 18, 2021, DEFENDANTS had received notice that in some of the Instant Pot® products that had been sold, it appeared to the consumer that the contents were not under pressure, when in fact they were, causing scalding hot contents to erupt from the pot when the lid was opened.

77. Prior to the sale of DEFENDANTS' Instant Pot® product to Plaintiff SAMANTHA BAKER on or before January 18, 2021, DEFENDANTS had received notice that in some of the Instant Pot® products that had been sold, the Instant Pot® was manufactured in such a way that it could be opened when under pressure, causing scalding hot contents to erupt from the pot when the lid was opened.

78.	Prior to the sale of DEFENDANTS' Instant Pot® product to Plaintiff SAMANTHA BAKER on or before January 18, 2021, DEFENDANTS had received notice that the statement in the Instant Pot® User Manual, "As a safety feature, until the float valve drops down, the lid is locked and cannot be opened," was not true.

79.	Prior to the sale of DEFENDANTS' Instant Pot® product to Plaintiff SAMANTHA BAKER on or before January 18, 2021, DEFENDANTS had received notice that the intended safety features for preventing the lid from being opened when the contents were under pressure was defectively designed, causing scalding hot contents to erupt from the pot when the lid was opened by consumers, and causing injury.

80.	Prior to the sale of DEFENDANTS' Instant Pot® product to Plaintiff SAMANTHA BAKER on or before January 18, 2021, DEFENDANTS had received notice that some of the safety devices intended for preventing the lid from being opened when the contents were under pressure were defectively manufactured, causing scalding hot contents to erupt from the pot when the lid was opened by consumers, and causing injury.

81.	Prior to the pressure cooker explosion and Plaintiff's injury on January 18, 2021, DEFENDANTS had received notice that in some of the Instant Pot® products that had been sold, the lid could be opened while still under pressure, causing scalding hot contents to erupt from the pot when opened.

82.	Prior to the pressure cooker explosion and Plaintiff's injury on January 18, 2021, DEFENDANTS had received notice that in some of the Instant Pot® products that had been sold, it appeared that the contents were not under pressure, when in fact they were, causing scalding hot contents to erupt from the pot when the lid was opened.

83.	Prior to the pressure cooker explosion and Plaintiff's injury on January 18, 2021, DEFENDANTS had received notice that in some of the Instant Pot® products that had been sold,

the Instant Pot® was manufactured in such a way that it could be opened when under pressure, causing scalding hot contents to erupt from the pot when the lid was opened.

84. Prior to the pressure cooker explosion and Plaintiff's injury on January 18, 2021, DEFENDANTS had received notice that the statement in the Instant Pot® User Manual, "As a safety feature, until the float valve drops down, the lid is locked and cannot be opened," was not true.

85. Prior to the pressure cooker explosion and Plaintiff's injury on January 18, 2021, DEFENDANTS had received notice that the intended safety features for preventing the lid from being opened when the contents were under pressure was inadequately designed, causing scalding hot contents to erupt from the pot when the lid was opened by consumers, and causing injury.

86. Prior to the pressure cooker explosion and Plaintiff's injury on January 18, 2021, DEFENDANTS had received notice that some of the safety devices intended for preventing the lid from being opened when the contents were under pressure were defectively manufactured, causing scalding hot contents to erupt from the pot when the lid was opened by consumers, and causing injury.

## COUNT I – STRICT LIABILITY
### (SAMANTHA BAKER v. All Defendants)

87. Plaintiff incorporates by reference paragraphs 1 through 86 of the Complaint as if fully set forth herein.

88. DEFENDANTS have a duty to place into the stream of commerce, design, manufacture, test, fill, label, distribute, market, promote, and sell the Instant Pot® and products that are not defective, unsafe and unreasonably dangerous when put to the use for which it was designed, manufactured, distributed, marketed, and sold.

89. DEFENDANTS did in fact design, manufacture, test, fill, label, market, promote, supply, distribute and/or sell Instant Pot® to consumers, including Plaintiff SAMANTHA BAKER.

90. DEFENDANTS expected the Instant Pot® they were designing, manufacturing, filling, testing, labeling, marketing, promoting, supplying, distributing and selling to reach, and it did in fact reach, consumers, including Plaintiff SAMANTHA BAKER, without substantial change in the condition.

91. At the time the Instant Pot® left the possession of DEFENDANTS and the time the Instant Pot® entered the stream of commerce, the Instant Pot® was in a defective, unsafe and unreasonably dangerous condition. These defects include but are not limited to the following:

a) The Pressure Cooker was designed and manufactured in a manner that allows the lid to be opened when the unit has pressure inside;

b) The Pressure Cooker's locking-lug design fails to prevent the locking pin (and therefore the lid) from rotating when the unit has pressure inside;

c) The Pressure Cooker fails to incorporate adequately designed locking lugs to prevent the lid from rotating when the unit has pressure inside;

d) The Pressure Cooker's lid-locking mechanism fails to have the strength and rigidity necessary to prevent the lid from opening when it has pressure inside;

e) The alloy used in the Pressure Cooker's lid-locking mechanism does not have the necessary strength and rigidity to prevent the lid from opening when it has pressure inside;

f) The Pressure Cooker's locking pin alloy reduces the frictional forces exerted by it when engaged;

g) The Pressure Cooker's locking mechanism has too much play in it which allows the lid to be rotated when the unit has pressure inside;

h) The Pressure Cooker's user must risk being burned in order to look observe the float valve's positioning;

i) The Pressure Cooker's float valve positioning and location make it difficult for the user to ascertain whether the lid is depressurized;

j) The Pressure Cooker fails to incorporate appropriate safety features that prevent the lid from opening when it has pressure inside;

k) The Pressure Cooker's float valve positioning and location make it such that a user could accidentally press it resulting in the lid opening while pressure remains in the unit;

l) The Pressure Cooker's warnings and Owner's Manual failed to provide adequate warnings concerning the risk of the Pressure Cooker opening when it has pressure inside;

m) The Pressure Cooker's warnings and Owner's Manual failed to provide warnings or instructions concerning the risk of opening when it has pressure inside, that the Pressure Cooker could in fact open when it has pressure inside and risk serious injuries to users;

n) The Pressure Cooker's label contains vague, misleading, and confusing statements and instructions about the product which differ from those in the Owner's Manual;

o) The Pressure Cooker's Owner's Manual falsely states that the lid will not open if there is pressure inside the unit;

p) The Pressure Cooker's marketing and videos falsely state that its lid will not open if there is pressure inside;

q) The Pressure Cooker's packaging contains misleading and confusing depictions of the product which conflict with instructions in the Owner's Manual;

r) Defendant failed to provide an adequate warning or instruction to users of the Pressure Cooker about how to safely use the Pressure Cooker when they experience difficulty opening the lid;

s) Defendant failed to provide adequate warning or instructions for users to definitively and safely determine whether pressure remained in the Pressure Cooker after a cooking cycle and releasing the steam;

t) At the time it left the control of the manufacturer, in the state of technical and scientific knowledge, reasonable and safer alternatives designs were available with respect to pot design and/or locking mechanisms and the alternative designs would have prevented the explosion and injuries in this case without substantially impairing the usefulness or the intended purposes of the product;

u) The Pressure Cooker's warnings and Owner's Manual failed to provide adequate warnings concerning the risk of explosion, the lid being capable of opening when pressure remains in the unit during ordinary use and causing burn injuries; and

v) The Pressure Cooker was otherwise defective, unsafe and unreasonably dangerous.

92. Had DEFENDANTS adequately tested the Instant Pot®, they would have discovered:

a) The lid could be opened when the Instant Pot® was still under pressure;

b) The safety devices were inadequate to prevent the lid from being opened when the Instant Pot® was still pressurized;

c) The safety devices of the Instant Pot®, at times, would indicate that there was no pressure in the Instant Pot®, when in fact there was pressure in the pot; and

d) That when the lid of the Instant Pot® was opened under pressure, steam and the contents would erupt from the pot and could cause severe, scalding injuries to the consumer opening the Instant Pot®, and anyone near the Instant Pot®.

93. At all times relevant to this complaint, SAMANTHA BAKER used the Instant Pot® for its intended purpose, and cleaned and stored it appropriately. There was no other reasonable cause of the Instant Pot's® failure to properly perform other than the Instant Pot® product being defective.

94. The Instant Pot® purchased by Plaintiff SAMANTHA BAKER was unsafe to an extent beyond which would be contemplated by the ordinary consumer with the ordinary knowledge common to the community as to its characteristics in that the Instant Pot® was designed in such a way that the ordinary consumer would not contemplate that the lid could be opened when the float valve was down, and the contents were still under pressure, causing scalding hot contents of the Instant Pot® to erupt from the pot when the lid was opened.

95. The Instant Pot® purchased by Plaintiff SAMANTHA BAKER was unsafe to an extent beyond which would be contemplated by the ordinary consumer with the ordinary knowledge common to the community as to its characteristics in that the Instant Pot® was manufactured in such a way that the ordinary consumer would not contemplate that the lid could be opened when the float valve was down, and the contents were still under pressure, causing scalding hot contents of the Instant Pot® to erupt from the pot when the lid was opened.

96. SAMANTHA BAKER could not have discovered any defect in the Instant Pot® through the exercise of due care.

97. DEFENDANTS, as designer, manufacturer, assembler, marketer, promoter, supplier, distributor and seller of food products are held to the level of knowledge of an expert in their field.

98. SAMANTHA BAKER did not have substantially the same knowledge regarding the dangers of the Instant Pot® as the designer, manufacturer, assembler, marketer, promoter, supplier, distributor and seller: DEFENDANTS.

99.    As a direct and proximate cause of one or more of the foregoing wrongful acts or omissions by DEFENDANTS, the Instant Pot® opened under pressure and SAMANTHA BAKER was caused to suffer and sustain injuries of a permanent nature including, but not limited to, burns, scarring, and disfigurement. Plaintiff also suffered great pain and anguish.  Plaintiff was hindered and prevented from Plaintiff SAMANTHA BAKER's usual and customary duties and affairs. Plaintiff will be in the future caused to endure great pain, suffering and disability and has expended and become liable for substantial sums of medical care and services while endeavoring to become cured and healed of said injuries and will continue to expend and become liable for additional costs for future medical treatment.  Furthermore, Plaintiff was unable to and will in the future be unable to attend to Plaintiff's normal affairs and duties for an indefinite period of time.

WHEREFORE, Plaintiff prays for judgment against Defendants, CORELLE BRANDS LLC and INSTANT BRANDS, INC. f/k/a DOUBLE INSIGHT INC., d/b/a INSTANT POT COMPANY, in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

### COUNT II – NEGLIGENCE
**(SAMANTHA BAKER v. All Defendants)**

100.    Plaintiff incorporates by reference paragraphs 1 through 86 of the Complaint as if fully set forth herein.

101.    At all times relevant, it was the duty of DEFENDANTS to exercise due care in designing, manufacturing, assembling, testing, labeling, marketing, promoting, supplying, distributing and/or selling Instant Pot's® such that they would be reasonably safe for their intended use.

102.    DEFENDANTS' negligence in the design, manufacture, testing, assembly, labeling, marketing, promotion, supplying, distribution and/or sale of the Instant Pot® to SAMANTHA BAKER includes but is not limited to the following:

a)      Negligently failed to appropriately inform users of the dangers associated with the Pressure Cooker;

b)      Misrepresented material facts regarding the Pressure Cooker's safety and fitness for use at home by consumers when in fact they are not safe for use at home by consumers;

c)      Misrepresented material facts regarding the Pressure Cooker's safety by withholding information regarding adverse events and information about incidents of explosions, the lid opening while pressurized and injuries caused by the Pressure Cookers;

d)      After receiving post-marketing incident reports and/or testing data, INSTANT BRANDS knew, or in the exercise of reasonable care, should have known that there was a significant risk of the Pressure Cooker exploding or the lid opening while pressurized during normal and foreseeable uses and failed to communicate or warn users of this information;

e)      Failed to provide warnings or instructions concerning the risk of explosion or the lid opening while pressurized during normal and foreseeable uses causing serious injuries in light of the fact that the Pressure Cooker would be used in kitchens and in close proximity to consumers;

f)      Failed to provide adequate warnings concerning the risk of explosion or the lid opening while pressurized during normal and foreseeable uses, and risk of burn injuries;

g)      Failed to provide adequate warnings concerning the appropriate methods of opening the Pressure Cooker and how to identify signs the Pressure Cooker is pressurized even when there is no steam being released from the unit;

h)      Failed to provide warnings or instructions concerning the risk of explosion or the lid opening while pressurized during normal and foreseeable uses, and risk of burn injuries, in light of incident reports that some people had experienced such things while using the Pressure Cooker;

i)      Failed to provide adequate instructions to persons cooking with and around their Pressure Cooker;

j)      Failed to provide adequate instructions concerning safe and/or safer methods of cooking with and around the Pressure Cooker;

k)      Failed to conduct adequate testing on the Pressure Cooker to determine if the lid-locking mechanisms adequately prevented the lid from opening while the unit is pressurized;

l)      Failed to monitor and analyze what post-marketing reports observed with regard to individuals working with and around INSTANT BRANDS Pressure Cookers and/or substantially similar products;

m)      Designed, manufactured, marketed, promoted, advertised, sold and distributed a Pressure Cooker which was not designed and/or manufactured with a lid to remain in place while the unit is pressurized;

n)      Was otherwise negligent in the design, manufacture, marketing, advertisement, promotion, sale and distribution of the Pressure Cooker.

103.    DEFENDANTS knew or had reason to know that SAMANTHA BAKER, as a member of the general public for whose use the Instant Pot® was placed into interstate commerce, would be likely to use or be around the Instant Pot® in a manner described in this Complaint.

104.    Prior to the incident set forth herein, DEFENDANTS were aware of Instant Pot® lids opening under pressure which resulted in personal injuries.

105.    Prior to the incident set forth herein DEFENDANTS were aware of Instant Pot® lids opening under pressure when this does not comply with the product's design or manufacturing specifications and tolerances.

106.    Prior to the incident set forth herein, DEFENDANTS were aware of Instant Pot® lids opening under pressure when other pressure cooker designs were not experiencing the same complications.

107.    DEFENDANTS knew or reasonably should have known of the danger associated with the manner and circumstances of SAMANTHA BAKER's presence in the vicinity of and/or foreseeable use of the Instant Pot®, which danger would not be obvious to SAMANTHA BAKER and the general public.

108.    SAMANTHA BAKER used the Instant Pot® for its intended purpose and stored and cleaned it appropriately; there was no other reasonable cause of the Instant Pot® failure to properly perform other than the Instant Pot® product being defective.

109.    SAMANTHA BAKER could not have discovered any defect in the Instant Pot® through the exercise of due care.

110. DEFENDANTS, as designers, manufacturers, testers, assemblers, labelers, marketers, promoters, suppliers, distributers and sellers of home appliances are held to the level of knowledge of an expert in their field.

111. SAMANTHA BAKER did not have substantially the same knowledge regarding the dangers of the Instant Pot® as the designer, manufacturer, assembler, tester, labeler, marketer, promoter, supplier, distributor and seller: DEFENDANTS.

112. As a direct and proximate cause of one or more of the foregoing wrongful acts or omissions by DEFENDANTS, the Instant Pot® opened under pressure and SAMANTHA BAKER was caused to suffer and sustain injuries of a permanent nature including, but not limited to, burns, scarring, and disfigurement. Plaintiff also suffered great pain and anguish. Plaintiff was hindered and prevented from Plaintiff SAMANTHA BAKER's usual and customary duties and affairs. Plaintiff will be in the future caused to endure great pain, suffering and disability and has expended and become liable for substantial sums of medical care and services while endeavoring to become cured and healed of said injuries and will continue to expend and become liable for additional costs for future medical treatment. Furthermore, Plaintiff was unable to and will in the future be unable to attend to Plaintiff's normal affairs and duties for an indefinite period of time.

WHEREFORE, Plaintiff prays for judgment against Defendants, CORELLE BRANDS LLC and INSTANT BRANDS, INC. f/k/a DOUBLE INSIGHT INC., d/b/a INSTANT POT COMPANY, in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

## JURY DEMAND

SAMANTHA BAKER HEREIN DEMANDS A TRIAL BY JURY.

Respectfully Submitted,

This the 8th day of January, 2024

**HOWARD, STALLINGS, FROM,
ATKINS, ANGELL & DAVIS, P.A.**

By:   /s/Robert H. Jessup
   Robert H. Jessup (State Bar #: 42945)
   Post Office Box 12347
   Raleigh, NC 27605
   PH:  (919) 821-7700 FAX:  (919) 821-7703
   RJessup@hsfh.com
   Attorneys for Plaintiff